[No. C. D. 3881. *En Banc.* November 13, 1952.]

*In the Matter of the Proceedings for the Discipline of*
*G. E. LOVELL, an Attorney at Law.*[1]

G. E. Lovell, pro se.

A. Vernon Stoneman, for the board of governors.

FINLEY, J.—This appeal involves disciplinary proceedings instituted by the Washington state bar association against G. E. Lovell, an attorney, practicing in Spokane, Washing-

[1]Reported in 250 P. (2d) 109.

ton.   The association charged unethical and unprofessional conduct, summarized briefly as follows:

1.   That attorney G. E. Lovell instituted a law suit (cause No. 118486, Spokane county) against the Old National Bank of Spokane and John Evans on behalf of Mary Witte, plaintiff, when he knew, or in the exercise of proper professional judgment should have known, that the plaintiff had no just cause against the defendant, and that the allegations of the complaint could not be proved; that such conduct on the part of Mr. Lovell violated canon No. 30 of the Code of Ethics of the legal profession, which provides:

"The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong.  But otherwise it is his right, and, having accepted retainer, it becomes his duty to insist upon the judgment of the court as to the legal merits of his client's claim.   His appearance in court should be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination." Rules of Court, Professional Ethics 30, 34A Wn. (2d) 124, 138.

2.   That he sued and took judgment by default in the sum of $2,500, plus costs and disbursements, against Mary Witte on behalf of Charles F. Hafer, plaintiff, when in fact G. E. Lovell was the real party in interest, and was the party of record, representing Mary Witte, in another pending law suit; and that, at the time of the default judgment, G. E. Lovell knew or should have known that Mary Witte was incompetent.   Relative to this aspect of the matter, the general rule as to dealings between an attorney and his client was involved in *In re Beakley*, 6 Wn. (2d) 410, 423, 107 P. (2d) 1097, wherein we quoted from 7 C. J. S., Attorney and Client, § 127, as follows:

" 'The relation of attorney and client has always been regarded as one of special trust and confidence.   The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them.   So strict is the rule on this subject that dealings between an attorney and his client

are held, as against the attorney, to be prima facie fraudulent, and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger.' 7 C. J. S., Attorney and Client, § 127."

3. That G. E. Lovell misrepresented significant facts to the court in cause No. 122522, Spokane county, thereby misleading the court and procuring a default judgment against Mary Witte, all of which constituted a fraud upon the court.

After a hearing on July 31, 1951, at which G. E. Lovell was duly represented by competent counsel and appeared as a witness in his own behalf, a trial committee of the Washington state bar association recommended to the board of governors thereof that G. E. Lovell be suspended and deprived of his right to practice law for a period of six months. Subsequently, at a meeting on December 15, 1951, in Spokane, after reviewing the matter, the board of governors concluded that the evidence previously presented to the trial committee was sufficient to warrant the following findings:

"That at the time the respondent commenced action #118486, he knew he could not prove the allegations of his complaint and started it to harass and injure the defendants; that when he took judgment by default against Mary Witte in Cause #122522, he knew she was verging on insanity and that his relationship should be one of special trust and confidence; and that in taking the said judgment under an allegation that Cause #118486 had been dismissed, the respondent committed a fraud upon the court."

Although agreeing with the findings of the trial committee, the board was of the opinion that the recommended penalty should be modified somewhat, particularly in view of respondent's age. Accordingly, a suspension from the practice of law for three months was recommended. We agree with the views of the board, on the basis of the facts as hereinafter discussed in some detail.

G. E. Lovell has practiced law in this state since 1902. For a number of years, he and Charles F. Hafer have occupied the same suite of offices at 410 Ziegler Building, Spokane, Washington. The latter is not a lawyer but is engaged in investigation, detective, and collection activities. It appears that over the period of years of their association Mr. Hafer referred numerous legal matters to Mr. Lovell.

Sometime during July, 1943, Mr. Hafer introduced Mary Witte to Mr. Lovell. Mr. Lovell became her attorney and represented her in extended litigation over the descent and distribution of property involved in the estate of Mrs. Witte's deceased husband. In this particular matter, he continued to represent her until the estate of her deceased husband was closed, April 25, 1947. The amount that Mrs. Witte realized from the estate was substantially increased, largely as a result of the litigation conducted by Mr. Lovell. For legal services in this matter, Mrs. Witte paid Mr. Lovell $12,316.

For some reason—which is not entirely clear from the evidence—Mrs. Witte called upon Mr. Hafer before the matter of her husband's estate was concluded (in which she was represented by attorney Lovell), and signed an agreement, ostensibly with Mr. Hafer, dated October 1, 1946, as follows:

"Mr. Charles F. Hafer has done some detective work for me and I have faith in his judgment. I desire him to be my agent and authorize him to investigate and hire an attorney to protect my right. I desire to bring a suit to collect from the Old National Bank and John Evans for the expenses they have caused me in carelessly and negligently managing the estate of E. A. Witte. I agree to pay Mr. Hafer the sum of $2,500.00 in full for bringing the suit, and he is to hire and pay for the attorney from that amount. This sum is to be payable at the termination of the suit in the Superior Court."

Apparently, somewhere there was some dissatisfaction over the manner in which the executor and the attorney for the estate of Mary Witte's husband had conducted themselves.

After the above-quoted agreement was executed, Mr. Hafer supposedly took Mrs. Witte to Mr. Lovell—the attorney who had been representing her since July, 1943, and who shared offices with Mr. Hafer. After some discussion and negotiations, Mr. Lovell was employed, and he prepared a complaint in behalf of Mary Witte against the Old National Bank of Spokane and John Evans, as defendants. The complaint was verified by Mrs. Witte on October 3, 1946, and was filed in Spokane county on January 25, 1947, as cause No. 118486. The superior court sustained demurrers to the complaint and the amended complaint in this cause. This action was appealed by attorney Lovell and was reversed by the supreme court holding that the amended complaint stated a cause of action. On June 19, 1948, attorney Lovell filed a further amended complaint in the cause. For some reason, this was not verified. On the same date, the trial court, on motion of the defendants to strike the unverified amended complaint, made the following order:

"It is by the court ordered that said plaintiff have seven days to sign her amended complaint and if it is not verified in that time, it is to be stricken."

No order striking the amended complaint was ever taken. Nothing further occurred in the cause until the last day of May, 1949, when the defendants moved for dismissal for want of prosecution. An order of dismissal for want of prosecution was entered on June 4, 1949. It bears the "o. k." and signature of attorney Lovell, as attorney of record for the plaintiff Mrs. Mary Witte.

The facts concerning the default judgment are as follows: On August 3, 1948, Mr. Lovell commenced cause No. 122522, Spokane county, in the name of Charles F. Hafer, plaintiff, against Mrs. Witte, defendant, for the recovery of $2,500, allegedly due under the agreement of October 1, 1946. In cause No. 122522, the complaint stated that Mary Witte, under the agreement of October 1, 1946, employed and agreed to pay G. E. Lovell the sum of $2,500; that G. E. Lovell had assigned all rights under the contract to Charles F. Hafer, plaintiff, for collection. It was further stated that

the lawsuit brought against the Old National Bank and John Evans pursuant to the agreement of October 1, 1946, was prosecuted in the superior court, appealed to the supreme court, sent back for trial in the superior court, *which court ordered that an amended complaint be filed*; that Mary Witte refused to sign the amended complaint and to prosecute the action further, and that "by reason thereof the case was dismissed in the lower court and the amount specified in the agreement became due."

On August 24, 1948, one day after the time for filing an answer had expired in cause No. 122522, attorney Lovell took default judgment against Mary Witte in the sum of $2,500, plus costs and disbursements.

On June 10, 1949, approximately nine months after the entry of the default judgment, Mary Witte was found to be insane and was committed to the Eastern State Hospital at Medical Lake, Washington. On June 11, 1949, the Old National Bank of Spokane was appointed guardian of the estate of Mary Witte, an incompetent, in Whitman county, Washington. Thereafter, attorney Lovell filed a creditor's claim in the Whitman county guardianship proceedings for the sum of $2,690, based upon the above-mentioned default judgment. Subsequently the bank, as guardian, commenced action No. 128114 in Spokane county against Charles E. Hafer and G. E. Lovell to vacate and restrain enforcement of the default judgment taken against Mary Witte on August 24, 1948. After trial, an order was entered vacating and restraining the enforcement of the judgment. This was on the ground that the default judgment had been entered by reason of fraud practiced upon the court by attorney Lovell.

Based on the above facts, it seems to us four significant factors or incidents emerge in this case:

1. The association between Charles F. Hafer and G. E. Lovell and their relationships over a period of approximately fifteen years, particularly as these related to Mary Witte and her affairs.

2. The lawsuit instituted by attorney Lovell, allegedly on behalf of Mary Witte against the Old National Bank of

Spokane and John Evans (cause No. 118486, Spokane county).

3. Misrepresentations contained in the complaint in the lawsuit instituted by attorney Lovell against Mary Witte, defendant, allegedly on behalf of Charles F. Hafer, plaintiff (cause No. 122522, Spokane county), which misrepresentations unquestionably misled the court and resulted in the default judgment in the sum of $2,500, plus costs and disbursements, against Mary Witte.

4. The mental condition of Mary Witte, which either was known or should have been known to attorney Lovell during the negotiations and the proceedings which concerned cause No. 118486, Spokane county, and cause No. 122522, Spokane county.

At the bar association hearings and in his brief here on appeal, attorney Lovell has offered an explanation as to each of the four matters indicated above. These explanations might possibly be considered reasonable and acceptable in connection with any one of the matters if considered singly and apart from the others. The actual testimony of witnesses in the disciplinary proceedings of the bar association is perhaps not so damaging to Mr. Lovell as is his own testimony and that of Charles F. Hafer in cause No. 128114, Spokane county (the lawsuit by the Old National Bank of Spokane, as guardian, against Messrs. Hafer and Lovell, to set aside the default judgment previously obtained in favor of one or the other, or both, of the indicated parties). In cause No. 128114, Mr. Hafer testified that the contract of October 1, 1946, with Mary Witte was entered into in the presence of attorney Lovell. Mr. Lovell first testified that he did not remember whether the contract was signed by Mrs. Witte in his presence or not. Subsequently, he testified to the contrary—that he, Mr. Hafer, and Mrs. Witte were together at the time the contract was signed. Mr. Hafer's testimony was to the effect that he thought Mr. Lovell dictated the contract; Mr. Lovell testified that Mr. Hafer had dictated the contract.

In cause No. 128114, Spokane county, Mr. Lovell (testifying as to the second amended complaint in cause No.

118486) stated, "I sent it down with a letter and told her she would have to sign it. She didn't sign it, so I assumed I was out of the case." The foregoing testimony is not consistent with Mr. Lovell's testimony at the July 31, 1951, hearing before the trial committee of the state bar when he stated that he handled this particular phase of the matter by taking a copy of the complaint, going to see Mary Witte personally, and explaining the matter of verification of the second amended complaint. The agreement of October 1, 1946, ostensibly runs between Charles F. Hafer and Mary Witte. Mr. Hafer testified in cause No. 128114, Spokane county, that he was to receive nothing; or, in other words, that the entire sum of $2,500 was to be paid to Mr. Lovell. It was pointed out that the agreement called for some investigatory work by Mr. Hafer, as well as for legal services by attorney Lovell. When questioned as to what investigatory work would be required, Mr. Hafer stated that none would be. It should here be pointed out that a transcript of the testimony in cause No. 128114, Spokane county, was admitted as part of an exhibit in the Washington state bar association's disciplinary proceedings against Mr. Lovell.

In the disciplinary proceedings, no attention was called to the fact that the agreement of October 1, 1946, provides that the sum of $2,500, which was to constitute payment in full for bringing the suit, was "to be payable at the termination of the suit in the superior court." A reasonable interpretation of this quoted provision of the agreement seems to us to indicate that the sum of $2,500 was to be paid upon a full and complete prosecution of the litigation. The lawsuit actually was never tried. It was dismissed for lack of prosecution. There is a most serious question as to whether the services rendered by attorney Lovell entitled him to the full amount contemplated by the agreement. Yet it was represented in the complaint in cause No. 122522, Spokane county, that the full sum of $2,500 had become due and payable under the agreement of October 1, 1946. In the disciplinary proceedings, no point was made of the fact that

the complaint in the cause just referred to stated "that the lower court ordered an amended complaint filed." There is nothing in the record defense of Mr. Lovell to substantiate the truth of this statement in the complaint. Actually, attorney Lovell's testimony in cause No. 128114 was that he did not recall why the second amended complaint was filed.

"Q. Was there any reason to file that amended complaint? A. I don't know. I suppose there may have been or I wouldn't have filed it. If you will let me see the two complaints, I might see the difference. I don't know. Q. Here they are. A. Anyway, I did file an amended complaint. I couldn't tell without looking at the two pleadings why I filed an amended complaint, but I know I left out some things in the amended complaint that I had in the other, I suppose, because the amended complaint only has twelve, and the other had fourteen, so I must have left out some."

In the complaint in cause No. 118486, Spokane county, the statement that cause No. 122522 (Mary Witte v. The Bank and John Evans) "was dismissed in the lower court," may have been a result of carelessness on the part of attorney Lovell. Whether knowingly or carelessly made, the statement was a misrepresentation to the court of significant facts. At the time the complaint was filed, attorney Lovell either knew or should have known that cause No. 118486, Spokane county, had not been dismissed. The court's order of June 19, 1948, in cause No. 118486, Spokane county, was that the plaintiff would have seven days to sign her amended complaint, "and if it is not verified in that time, it is to be stricken." On the basis of the court order, the second amended complaint might have been stricken, but the order does not justify an assumption that the cause was to be dismissed, certainly without any notice whatsoever to attorney Lovell.

As to Mr. Lovell's conduct in commencing the suit against the Old National Bank of Spokane and John Evans, we refer to a letter dated June 27, 1947, from Mr. Lovell to John Evans, which reads as follows:

"Dear Evans:
"Thanks for your notation.
"I think you have always felt that I was going our of my

way in bringing a suit against you. I told her not to bring the suit. She went up to see Hafer. He had her sign an agreement to pay him and stated he would either get me or some other lawyer.

"You must have realized that there was no chance of making a recovery. If the Supreme Court decides, as it should, that I have stated a cause of action, you must realize that I can produce no evidence to substantiate my cause of action. But she certainly has a cause of action if she can prove it."

And in this connection, we refer to Mr. Lovell's brief, supplied to Judge Edgerton in the case of Old National Bank v. Hafer and Lovell, cause No. 128114, Spokane county, wherein it was stated:

"The fact is in 1946, Mrs. Witte was a determined, vindictive, old woman. She was rich and she was perfectly willing to give $2,500.00 to a lawyer who would make trouble for the people who had robbed her of her inheritance."

On April 19, 1944, attorney Lovell wrote a letter to Wilkinson and Evans, Colfax lawyers, reading as follows:

"Mrs. Mary Witte is very anxious to have the original will transmitted to Olympia.

"As you realize, and I realize, it has nothing to do with the case but *the old lady verges on insanity half of the time* and there is no particular reason to hector her feelings. She writes me, long, complicated letters about what the Supreme Court will do when they see the will, but you and I know that they will do nothing, and it would save me considerable trouble if the will could be sent to Olympia. I am enclosing a stipulation, if it is satisfactory to you." (Italics ours.)

Again, on December 6, 1945, he wrote the late Mr. W. L. LaFollette as follows:

"You must realize that I have a difficult client who gets all her information somewhere else and who doesn't believe a thing I tell her and comes in with various demands. Someone has advised her that she must make an offer to her children or else they could put her in jail! She came in and insisted that I should go down personally and see her children. I told her I would not go down personally but would

write a letter for her, which was done. There was no notion on my part that the letter would be accepted and I was thinking of sending you a copy but the whole situation was so foolish a copy to you was overlooked. She spends one-half the time demanding I do various things I don't want to do *and I am trying to get this matter settled before she goes insane.*" (Italics ours.)

■ Considering the entire record in the disciplinary proceedings, the relationship between Messrs. Hafer and Lovell, particularly as they related to Mary Witte; the questionable basis of the lawsuit against the Old National Bank of Spokane and John Evans (cause No. 118486); the misrepresentations made to the court in Charles F. Hafer v. Mary Witte, cause No. 122522, Spokane county; the facts relative to what Mr. Lovell knew or should have known concerning the mental condition of Mary Witte, his actions with reference to her and her best interests in the latter-mentioned lawsuit, particularly his haste in securing the default judgment; his purported attorney-client relationship with Mr. Hafer when still the attorney of record for Mrs. Witte; the fact that Lovell's personal interests rather than those of Mr. Hafer generated the lawsuit and the default judgment against Mrs. Witte; the conflicting testimony of Mr. Lovell; and all of the other circumstances involved, we are forced inevitably to a conclusion that his conduct fell considerably short of acceptable standards of professional conduct. It is our view that the recommendations of the board of governors of the Washington state bar association for a three-months suspension must be affirmed. It is so ordered.

SCHWELLENBACH, C. J., MALLERY, HILL, GRADY, HAMLEY, DONWORTH, and OLSON, JJ., concur.